IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FALON B., o.b.o. B.H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 3483 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

On November 7, 2014, the claimant, Falon B. ("Plaintiff"),[3] filed a *pro se* application for supplemental security income ("SSI") on behalf of her minor daughter, B.H., alleging that B.H. had been disabled since she was born on June 4, 2014 (R. 113.) After her claim was denied initially

---

[1]The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On August 20, 2018, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 16.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 30.)

[3]The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name, thereby suppressing her last name, in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id.* A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id.*, citing *Doe v. Blue Cross & Blue Shield Unites of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing. Put to such a showing here, a party may well be able to demonstrate that suppressing the surname of the plaintiff inflicts little or no prejudice upon the government defendant, but establishing that the circumstances favoring privacy are so exceptional as to outweigh the public policy in favor of identified parties would be more challenging. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated. The Court's understanding is that the claimants are not anonymous litigants, in that their names in all of these matters brought for judicial review under the Social Security Act are otherwise available upon a review of the public docket.

and on reconsideration, Plaintiff sought and received a hearing before an administrative law judge ("ALJ"). Plaintiff appeared *pro se* at the hearing on January 30, 2017, and on May 5, 2017, the ALJ issued a written opinion denying her application for benefits. (R. 9.) On March 17, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ decision (R. 1), making the ALJ's decision the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

On November 19, 2018, Plaintiff filed a *pro se* brief seeking reversal or remand of the Commissioner's decision denying her application for SSI. (D.E. 21.) The Commissioner has filed a cross-motion for summary judgment asking the Court to affirm the decision denying benefits. (D.E. 24.) Although the Court gave Plaintiff additional time to file a reply brief in support of her motion (D.E. 29), she did not do so. The matter is now fully briefed. For the following reasons, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## I. B.H.'s Medical Record

B.H. was born on June 4, 2014, with a congenital eye anomaly: her right eye had a larger orbit than the left. (R. 191-92). B.H. was otherwise healthy; she and her mother were discharged from the hospital after three days, with instructions to follow normal newborn care. (*Id.*)

On September 15, 2014, ophthalmologist, Mark J. Greenwald, M.D., evaluated B.H. and diagnosed her with coloboma of fundus (the back, interior part of the eye, which includes the retina) in both eyes and microphthalmos in her left eye.[4] (R. 203.) In the right eye, Dr. Greenwald found that the fundus coloboma was minimal and the macula (the functional center of the retina)

---

[4] "Coloboma is an eye abnormality that occurs before birth. Colobomas are missing pieces of tissue in structures that form the eye. . . . Colobomas may be present in one or both eyes and, depending on their size and location, can affect a person's vision. . . . Some people with coloboma also have a condition called microphthalmia. In this condition, one or both eyeballs are abnormally small. Microphthalmia may or may not result in significant vision loss." https://ghr.nlm.nih.gov/condition/coloboma (last visited on Aug. 12, 2019).

was normal, and he expected B.H. would have normal lifetime vision in the right eye. (R. 204, 207.) However, the fundus coloboma was moderate in the left eye, and while there was some preservation of the macula in the left eye, Dr. Greenwald was uncertain of the visual prognosis in that eye. (R. 203-04.) Moreover, the microphthalmos combined with amblyopia (lazy eye) in the left eye concerned him regarding vision. (R. 204.) Dr. Greenwald prescribed patching the left eye one hour per day to improve visual potential in that eye.[5] (R. 207.) At a follow-up visit on December 29, 2014, Dr. Greenwald's examination of B.H. was unchanged. (R. 243.) Plaintiff found it difficult to patch B.H.'s right eye because it made her irritable, but she reported that B.H. would occasionally reach for an object with the patch on. (*Id.*)

On February 25, 2015, a non-examining state agency physician reviewed B.H.'s records on behalf of the Social Security Administration ("SSA"). The physician found that B.H's eye impairment was severe, but that she did not meet a child listing for loss of central visual acuity. (R. 55-56.) In addition, the report stated that B.H.'s impairment was not functionally equivalent to a listing because other than a marked limitation in the domain of health and physical well-being, B.H. had no other significant problems.[6] (R. 56-57.) On June 30, 2015, the state agency findings were affirmed on reconsideration. (R. 65-66.)

On April 6, 2015, B.H. was again evaluated by Dr. Greenwald. At that visit, Dr. Greenwald noted that the size of B.H.'s left eye was possibly decreasing, with possible accumulation of subretinal fluid. (R. 352.) Dr. Greenwald indicated his intent to discuss with another physician the

---

[5]On October 9, 2014, a brain MRI confirmed that B.H. had a colobomatous cyst behind her left eye, which is associated with the microphthalmia. (R. 213.) *See* https://rarediseases.info.nih.gov/diseases/3644/microphthalmia-associated-with-colobomatous-cyst (last visited on Aug. 12, 2019).

[6]To functionally equal a listing, the child claimant's impairment or combination of impairments must result in "marked" limitations in two of the following domains of functioning or an "extreme" limitation in one of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d).

possibility of retinal detachment repair and evaluation of the left eye under anesthesia. (*Id.*) He noted that B.H.'s right eye could fix and follow, but the left still could not. (R. 361.)

On June 7, 2015, B.H. was evaluated by the Chicago Lighthouse for People Who Are Blind or Visually Impaired. (R. 371.) The evaluator observed little to no functional vision in B.H.'s left eye and normal vision on the right. (R. 373.) Overall, the evaluator found that B.H.'s visual development was typical and her current set of visual skills were meeting expectations; however, the evaluator opined that as B.H. got older, her visual skills will need to be monitored so that she did not present with delays in her visual and compensatory skill set, and she should be given special accommodations to maximize to continue building her visual skills. (R. 373-74.)

At B.H.'s 18-month-old check-up on December 18, 2015, B.H.'s pediatrician noted that B.H. "look[ed] good" despite delayed development, acute bronchiolitis,[7] and her fundus coloboma and left microphthalmos. (R. 377-78.) At B.H.'s well-child visit on July 15, 2016, her pediatrician noted that she continued to gain healthy weight, but she was still noted to have delayed development, intermittent asthma, left microphthalmos and fundus coloboma. (R. 380-81.)

On September 28, 2016, B.H. was examined by the Illinois Eye Institute. Plaintiff reported that B.H. asked questions about her left eye and noticed that she did not see as well out of that eye. (R. 384.) The evaluating optometrist opined that B.H. was likely to have sensory exotropia with intermittent left eye turn out, that is, her left eye will likely deviate outward due to poor vision, and she discussed with Plaintiff treatment for this in the future.[8] (R. 387.) B.H. received a

---

[7]"Bronchiolitis is a common lung infection in young children and infants. It causes inflammation and congestion in the small airways (bronchioles) of the lung." https://www.mayoclinic.org/diseases-conditions/bronchiolitis/symptoms-causes/syc-20351565 (last visited on Aug. 28, 2019).

[8]Exotropia, depending on the severity, may require treatment such as glasses, part-time patching or even eye muscle surgery. https://www.mayoclinic.org/medical-professionals/pediatrics/news/strabismus-the-importance-of-timely-specialized-care/mqc-20452790 (last visited on Aug. 28, 2019).

prescription for eyeglasses with a strength of +0.75 in her right eye and +7.00 strength in her left eye as well as cosmetic magnification for her left eye. (R. 383.)

**II. Evidentiary Hearing**

On January 30, 2017, Plaintiff appeared without her daughter or an attorney at the hearing in support of her claim for benefits for B.H.[9] Plaintiff had read and received the SSA's notice regarding the benefits of representation, and the ALJ walked her through the notice, explaining how an attorney could help and how she might be able to obtain an attorney without incurring out of pocket expenses. (R. 31-32.) The ALJ explained that Plaintiff could waive her right to an attorney or seek additional time to obtain one. (R. 32.) Plaintiff responded that she had already called several places recommended by the SSA and family members, but they either do not represent children or they do not call her back or she is at work when they call back. (R. 30, 33-34.) The ALJ asked if she wanted to try one more time to find an attorney because he knew that some attorneys did represent children, but Plaintiff decided to waive her right to representation for purposes of the hearing so that the hearing could proceed. (R. 33-35.)

Plaintiff testified that she and B.H.'s father "take pride in teaching her colors, shapes, making her identify letters and numbers. She's not advanced but she's, to be someone with the condition like hers, she, from what we're teaching her, she's catching on, slowly but surely." (R. 41.) Plaintiff testified that B.H. frequently cries because she cannot see out of her smaller eye. (R. 48-49.) In addition, Plaintiff testified that she brought B.H. to the emergency room recently because she fell and cut her head open, which Plaintiff attributed to her vision problems. (R. 47, 50.)

---

[9]The Court notes that the hearing transcript refers to B.H.'s mother by a name other than "Falon B." The ALJ did not ask Plaintiff to spell out her name, and the court reporter noted that the spelling was "phonetic." (R. 39.)

## III. ALJ's Decision

On May 5, 2017, the ALJ issued a written opinion finding that B.H. was not disabled under the Social Security Act. (R. 12.) The ALJ addressed the three-step sequential evaluation process used to determine whether an individual under the age of 18 is disabled: (1) whether B.H. was engaging in substantial gainful activity, which, of course, as a toddler she was not; (2) whether B.H. had a medically determinable impairment or combination of impairments that was "severe"; and (3) whether B.H. had an impairment or combination of impairments that met or medically equaled the severity of a listing, or that functionally equaled a listing. (R. 13, citing 20 C.F.R. § 416.924(a)-(d).) At Step Two, the ALJ found that B.H. had the following severe impairments: coloboma of fundus in both eyes and microphthalmos of the left eye. (R. 15.)

At Step Three, the ALJ determined that B.H. did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment because the evidence showed that "her visual impairment did not affect her current skill set and . . . she was meeting expectations in regards to her visual skills," with the expectation of "normal lifetime vision with the right eye." (R. 16.) The ALJ then considered whether B.H. had an impairment or combination of impairments that functionally equaled the severity of a listing. (*Id.*) To functionally equal the severity of a listing, the claimant's impairment or combination of impairments must result in "marked" limitations in two of the following domains of functioning or an "extreme" limitation in one of the following domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d). A marked limitation "interferes seriously" with the child's ability to independently initiate, sustain

or complete activities, and an extreme limitation interferes "very seriously" in the child's ability to independently initiate, sustain or complete activities. *Id.* at §§ 416.926a(e)(2), (e)(3).

Like the non-examining state agency physicians, to whom the ALJ assigned "significant weight," the ALJ found B.H. had no limitations in the domains of acquiring and using information, attending and completing tasks, moving about and manipulating objects, and caring for herself. (R. 18-22). The ALJ also found that B.H. had less than marked limitations in the domains of interacting and relating with others and health and physical well-being.[10] (R. 21-22.) The ALJ relied on Dr. Greenwald's reports, which showed that although B.H. had little to no functional vision in her left eye, she was expected to have normal vision in her right eye, and overall her visual development was "meeting expectations." (R. 18.) However, the ALJ recognized Dr. Greenwald's opinion that B.H.'s visual diagnosis could have a negative effect on her visual development as she got older, and B.H. needed special accommodations to maximize her residual vision and continue building her current visual skills. (R. 16, 22.) Because B.H. did not have marked limitations in two domains of functioning or extreme limitation in one domain, the ALJ concluded that B.H. was not disabled under the regulations. (R. 23.)

### IV. Post-Decision Evidence

On June 15, 2017, Plaintiff submitted additional evidence to the Appeals Council in seeking review of the ALJ's decision, including records from Chicago Public Schools ("CPS") dated August 7, 2017. (R. 2, 111.) In the Appeals Council's decision denying review, it explained that because this evidence post-dated the ALJ's decision finding that B.H. was not disabled

---

[10] A "less than marked limitation" means a child's impairment does not "interfere[] seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

beginning on or before May 5, 2017, for that evidence to be considered, Plaintiff would need to file a new claim for SSI alleging B.H. became disabled after May 5, 2017. (R. 2.)

**V. Plaintiff's Arguments for Remand**

Subsequently, Plaintiff sought review of the Commissioner's decision in this Court. She continues to represent herself in this matter without the assistance of an attorney.[11] The Court is "obligated to liberally construe a *pro se* plaintiff's pleadings," and "will address any cogent arguments we are able to discern" in her Court filings. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)).[12]

Plaintiff primarily argues that the ALJ's decision should be reversed and remanded because CPS found B.H. disabled and entitled to an individualized education plan ("IEP") on August 7, 2017, and B.H. was born with the visual impairment upon which CPS made its decision. (D.E. 21: Pl.'s Br.) Therefore, Plaintiff argues that B.H. was disabled on or before the date of the ALJ's May 5, 2017 decision. (*Id.*) In addition, the Court has considered Plaintiff's other federal court filings, including her amended complaint (D.E. 14) and her second motion for attorney representation (D.E. 28), and has discerned that Plaintiff also contends that the ALJ's decision should be reversed and remanded because he failed to fully and fairly develop the record. For the reasons discussed below, the Court finds that the ALJ's decision denying benefits to B.H. for the period preceding May 5, 2017 was supported by substantial evidence.

---

[11]Plaintiff filed two motions to obtain attorney representation in federal court. The first motion (D.E. 4) was denied for failure to demonstrate that she had made an effort to secure attorney representation on her own (D.E. 17), and the second motion (D.E. 28) was denied for reasons listed in a written statement by the court (D.E. 29).

[12]Plaintiff does not argue that the ALJ failed to obtain a valid waiver of representation, but the Court notes that Plaintiff was adequately advised of her right to counsel. She was sent the required written notice apprising her of "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees," and the ALJ "issue[d] the claimant an oral reminder at the hearing." *See Jozefyk*, 923 F.3d at 496-97.

## VI. Analysis

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). "Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal citations and quotations omitted).

### A. CPS's August 2017 Evaluation

Plaintiff argues that the ALJ's May 2017 decision finding B.H. not disabled should be reversed and remanded because she alleges CPS found B.H. disabled in August 2017 based on eye impairments she has had since birth. This argument confuses CPS's standards with the Social Security regulations and erroneously merges Steps Two and Three of the three-step evaluation the ALJ applies to determine whether a child under the age of 18 is entitled to SSI benefits.

*First*, a decision by another government agency -- such as CPS -- regarding disability does not bind the Social Security Administration because different agencies apply different rules and standards. 20 C.F.R. § 416.904. *Second*, even if CPS found that B.H. was disabled as of August 7, 2017, and the Commissioner agreed with this finding, that does not mean that B.H. must have been disabled since birth, or even since the date of the ALJ's decision. Some severe impairments may

9

never become disabling, and others may begin or cease to be disabling as of a certain date. *See L.D.R.*, 920 F.3d at 1149-50 (affirming the ALJ's determination that the claimant's minor son did not qualify for Social Security disability benefits until second grade even though he had suffered from several health problems since he was born). The fact that B.H. was born with coloboma of fundus in both eyes and microphthalmos of the left eye does not establish that those impairments have become or will become disabling under the Social Security regulations.

### B. The ALJ's Duty to Develop the Record

Plaintiff also contends that the ALJ erred because he should have considered more recent medical reports or ordered B.H. to be evaluated by a state agency ophthalmologist. In addition, Plaintiff argues that B.H. should have an opportunity to testify at a hearing.

The ALJ's duty to develop a full and fair record "is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). However, "there is no absolute requirement that an ALJ update the medical records to the time of the hearing," and a "significant" -- or "prejudicial" -- omission "is usually required before this court will find that the Commissioner failed to assist *pro se* claimants in developing the record fully and fairly." *Id.* at 1098-99. "The ALJ's duty to develop the record fully and fairly where the claimant proceeds without counsel is met if the ALJ probes the claimant for possible disabilities and uncovers all of the relevant evidence." *Jozefyk*, 923 F.3d at 497 (internal citations and quotations omitted).

"To prove prejudice, the claimant must point to specific, relevant facts that the ALJ did not consider." *Jozefyk*, 923 F.3d at 497. However, the only specific facts Plaintiff references are those in the CPS report, which was created after the ALJ issued his opinion and thus could not be

10

considered by him. In addition, "an ALJ must consult with an expert only when, in the ALJ's opinion, [] new evidence might cause an initial medical opinion to change." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing SSR 96-6p, 1996 WL 374180, at *4). As Plaintiff does not point to any new evidence from before the date of the ALJ's opinion, the law did not require the ALJ to consult a medical expert.

In this case, the ALJ's decision that B.H. was not disabled as of May 5, 2017, the date of the decision, was supported by substantial evidence. The ALJ considered state agency reports and reports from B.H.'s treating medical professionals. In addition, at the hearing, the ALJ obtained Plaintiff's testimony as to B.H.'s more recent functional limitations from her visual impairments and entered into the record the most recent of Plaintiff's exhibits. (R. 35, 47-50.) The ALJ appropriately determined that the consensus from this evidence was that B.H. had severe vision limitations in her left eye, but that she had normal or near-normal vision in her right eye, and her overall visual development was meeting expectations.[13] The ALJ properly relied on this evidence to determine that B.H.'s severe impairments did not result in marked limitation in two domains of functioning or extreme limitation in one domain of functioning.[14] 20 C.F.R. § 416.926a(d).

---

[13] The Court notes that although the ALJ entered into the record the pediatrician reports from September and December 2015 and the September 2016 Illinois Eye Institute evaluation, it is not clear whether the ALJ explicitly considered these reports in his opinion. Nevertheless, these reports support the consensus that although B.H. had severe vision limitations in her left eye, she had normal or near-normal vision in her right eye and her overall visual development was meeting expectations. Thus, even if the ALJ did not consider these reports, this error would be harmless because the ALJ's decision is supported by the record, and Plaintiff has presented no evidence that B.H. was more limited than the ALJ determined. *See Jozefyk*, 923 F.3d at 498 (holding that error was harmless where there was no evidence that the claimant was more limited than the ALJ found); *see also Schloesser v. Berryhill*, 870 F.3d 712, 721 n.4 (7th Cir. 2017).

[14] Even if the ALJ had agreed with the state agency physicians that B.H. had marked limitation in the domain of health and physical well-being, this Court would uphold the ALJ's decision because B.H. would still not have the two marked limitations needed to functionally equal the listings. 20 C.F.R. § 416.926a(d). *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (courts "will not remand a case to the ALJ for further explanation if [they] can predict with great confidence that the result on remand would be the same.")

The Court commends B.H.'s parents for taking such a proactive approach to seeking services for their daughter, both at home and in school. The Court agrees with the Appeals Council that Plaintiff may file a new claim for SSI alleging B.H. became disabled after the date of the ALJ's opinion.

## CONCLUSION

For the foregoing reasons, we deny Plaintiff's request for remand (D.E. 21) and grant the Commissioner's motion to affirm (D.E. 24).

ENTER:

*/s/ Gabriel A. Fuentes*
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: September 4, 2019**